UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TYLER TECHNOLOGIES, INC.,

        Plaintiff,

vs.

        Case No.: 3:22-cv-01368-HLA-JBT

CITY OF JACKSONVILLE, FLORIDA,

        Defendant.

## AMENDED COMPLAINT

Plaintiff Tyler Technologies, Inc. ("Tyler") files this Amended Complaint against Defendant City of Jacksonville, Florida ("Jacksonville"). In support of its claims herein, Tyler respectfully alleges the following:

### I. INTRODUCTION

1. This case involves a license and services agreement whereby Tyler licensed certain software and provided services to Jacksonville to implement an automated records management system for law enforcement. In March 2022, Jacksonville indicated to Tyler that it wished to terminate the agreement for convenience. At that time, Jacksonville owed Tyler over $1.6 million for software licensed and other services provided. Despite repeated requests for payment, Jacksonville has failed to pay Tyler and has—in further violation of the terms of

1

the agreement—refused to engage in good faith efforts by Tyler to resolve the outstanding dispute.

## II. **PARTIES**

2.      Tyler is a Delaware corporation that maintains a principal place of business at 5101 Tennyson Parkway, Plano, Texas 75024. Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler offers four groups of solutions, including Public Administration, Courts and Public Safety, K-12 Education, and Transformative Technology.

3.      Defendant Jacksonville is a municipal corporation existing under the Constitution and laws of Florida. Jacksonville has appeared in this action and can be served by serving Tiffiny Douglas Pinkstaff, Assistant General Counsel, Office of General Counsel, 117 West Duval Street, Suite 480, Jacksonville, Florida 32202 and Deidra Baines, Procurement Manager, Jacksonville Sheriff's Office, 501 E. Bay Street, Jacksonville, Florida 32202.

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Tyler and Jacksonville are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Jacksonville is located in this District and a substantial part of the events or omissions giving rise to Tyler's claims occurred in this District. Furthermore, the parties, by agreement, consented to the courts located in Jacksonville, Duval County, Florida.

### IV. FACTUAL BACKGROUND

6. On June 30, 2020, Tyler and Jacksonville entered into a License and Services Agreement (the "Agreement"), whereby Tyler contracted to license certain software and provide certain services to Jacksonville in order to implement an automated records management system for law enforcement and ancillary modules (the "System").

7. The initial contract term was seventy-nine months to fully implement the software. The Agreement did not include a termination for convenience provision; however, the Agreement did provide that Jacksonville could terminate the Agreement "for cause" only as follows:

> [Jacksonville] may terminate this Agreement for cause in the event [Tyler does] not cure, or create a mutually agreed

3

action plan to address, a material breach of this Agreement within thirty (30) calendar days of [Tyler's] receipt of notice thereof. Within such thirty [30] day period, [Jacksonville] shall cooperate with [Tyler] as provided in the first sentence of the Dispute Resolution clause set forth in Section J(3). In the event of termination for cause, [Jacksonville] will pay [Tyler] for all undisputed fees and expenses related to the software products, and/or services [Jacksonville has] received, or [Tyler has] delivered, prior to the effective date of termination.

8.  Section J(3) of the Agreement also provided as follows:

    [Jacksonville] agree[s] to cooperate with [Tyler] in trying to reasonably resolve all disputes, including, if requested by either party, appointing a senior representative to meet and engage in good faith negotiations with [Tyler's] appointed senior representative.

9.  In 2020, Tyler began implementation of the System per the terms of the Agreement, and Tyler performed substantial work on behalf of Jacksonville. In late 2021, Jacksonville raised several issues regarding the functionality of the System that required Tyler to modify the System for Jacksonville's specific preferences. The parties met several times in late 2021 and early 2022 regarding Jacksonville's requests. In March 2022, Tyler proposed resolutions for all identified issues; however, Jacksonville rejected Tyler's proposal and expressed its desire to discontinue project activities and terminate the Agreement. On May 5, 2022, the parties held an additional meeting during which Tyler reiterated its desire to proceed with project activities on the System, but Jacksonville refused to resume work and restated its desire to terminate the Agreement for

convenience. During all of these discussions, Jacksonville never identified any material breach, provided any notice of breach, or otherwise suggested that any defect in the software or services existed or needed to be cured or addressed by Tyler.

10. For the next several months, legal teams for Tyler and Jacksonville engaged in discussions regarding Jacksonville's termination for convenience request. During these discussions, Tyler emphasized its belief that—consistent with legal and industry standards for terminations for convenience—Jacksonville was required to pay for services and software that Tyler had already provided. Although Jacksonville stated its desire not to pay for those services and software, no representative of Jacksonville ever identified any material breach or suggested that the termination was "for cause" per the terms of the Agreement. Instead, the discussions were centered around Tyler's offer to accommodate Jacksonville by allowing the city to terminate the Agreement for convenience even though the Agreement did not provide such a right.

11. Tyler also repeatedly advised Jacksonville that Tyler's team was ready, willing and able to re-engage and complete the implementation of the System. Despite repeated requests from Tyler, Jacksonville refused to consider or coordinate any discussions between either party's business leaders or senior representatives. On August 22, 2022, Tyler sent a letter to Jacksonville that

5

Case 3:22-cv-01368-J_T   Document 12   Filed 02/08/23   Page 6 of 12 PageID 42

outlined the specific amounts due and outstanding pursuant to the Agreement based on Jacksonville's purported termination for convenience. The letter noted that Jacksonville owed a total of $1,488,510.75 in fees, including $1,334,823.75 in unpaid licensing fees for software that had already been delivered and $153,687 for professional services that had been provided. In addition, the letter noted that Jacksonville owed $221,862.33 in maintenance fees under the Agreement, although Tyler suggested that, in order to facilitate a resolution, Tyler would be willing to waive those fees.

12.     On September 7, 2022, after months of discussing a termination for convenience, Jacksonville abruptly and inexplicably changed its position and sent Tyler a "Notice of Termination for Cause," which purported to terminate the Agreement "for cause" effective in 30 calendar days. The letter contained vague references to purported issues with the System, including a complaint that it would "require significant staffing increases and cumbersome manual processes" to run the System. The letter noted that it was not providing a "comprehensive list of the outstanding deficiencies."

13.     Tyler responded to Jacksonville's purported Notice of Termination for Cause on September 14, 2022, and indicated that the notice was "inappropriate," failed to identify any "material breach," contained inaccurate information regarding the status of the project, and failed to comply with the

6

contractual cure provisions in the Agreement. Tyler reiterated the fact that it was owed over $1.6 million per the terms of the Agreement and sought to facilitate business-to-business discussions with senior representatives per the dispute resolution provisions in the Agreement.

14. On September 29, 2022, at Tyler's urging, Jacksonville provided an "Itemized List of Issues" that it claimed were grounds for termination for cause. The list included 13 items that Jacksonville suggested were open issues. On October 11, 2022, Tyler provided a detailed response to these 13 issues, explaining that none constituted a material breach or a software defect that would justify a termination for cause. Tyler further outlined the specific status of each issue and identified how the parties had jointly planned to address those issues based on prior discussions. Tyler's letter contemplated ongoing discussions with Jacksonville to implement that plan.

15. On October 17, 2022, Jacksonville sent a letter purporting to confirm that it was terminating the Agreement "for cause" and stating that Jacksonville would not pay any outstanding amounts owed. On October 21, 2022, Tyler sent a letter disagreeing with Jacksonville's effort to terminate for cause and its refusal to pay outstanding amounts owed. Tyler also reiterated its desire to engage with Jacksonville's business leadership per the terms of the dispute resolution

7

provisions in the Agreement and suggested non-binding mediation to help the parties' resolve their dispute.

16. On November 1, 2022, Jacksonville responded that "the City does not owe any amounts under the terminated contract, and therefore is not amenable to mediation or further discussions regarding the City's right to terminate or amounts that Tyler believes to be due and owing." On November 29, 2022, Tyler again reached out to Jacksonville through its outside legal counsel and requested that Jacksonville comply with the terms of the dispute resolution provisions in the Agreement by engaging in good faith negotiations with Tyler. Tyler requested a response by no later than December 9, 2022. Jacksonville failed to respond.

17. Jacksonville's unjustified termination, refusal to pay outstanding amounts owed and failure to cooperate in good faith to invoke the "cure" process and/or engage in meaningful discussions per the dispute resolution provisions all constitute breaches of the Agreement. Tyler is entitled to be paid the over $1.6 million outstanding amount due pursuant to the Agreement.

## V. **CAUSES OF ACTION**

### **COUNT I. – BREACH OF CONTRACT**

18. Tyler re-alleges and incorporates the allegations paragraphs 2 through 17 as if expressly set forth herein.

19. Tyler and Jacksonville entered into a valid, binding, and enforceable contract as described herein and as evidenced by the Agreement and other relevant ancillary documents.

20. Tyler performed its obligations under the contract, and at all relevant times Tyler has been willing and able to perform its obligations under the Agreement.

21. Jacksonville has materially breached the contract by wrongfully terminating the Agreement, failing to pay for software and services Tyler provided under the Agreement, and failing to cooperate in good faith to invoke the "cure" process and/or engage in dispute resolution processes as required by the Agreement.

22. As a direct and proximate result of Jacksonville's material breaches of contract, Tyler has suffered damages and is entitled, among other things, to recover its damages in in excess of $1.6 million.

## COUNT II. – DECLARATORY RELIEF

23. Tyler re-alleges and incorporates the allegations in paragraphs 2 through 17 as if expressly set forth herein.

24. Pursuant to 28 U.S.C. § 2201, Tyler seeks the following declaratory relief from this Court, declaring Tyler's rights under the Agreement:

(i). A declaration that Tyler's actions in connection with the implementation of the System have been consistent with the obligations imposed by the Agreement, that there is no Defect in the Tyler Software, and that Tyler has not materially breached the Agreement;

(ii). A declaration that Jacksonville breached the Agreement by purporting to terminate for convenience;

(iii). A declaration that Jacksonville improperly sought to terminate the Agreement "for cause" and did not invoke the "cure" process in good faith in breach of the Agreement; and

(iv). A declaration Jacksonville improperly refused to cooperate or otherwise engage in the dispute resolution procedures required by the Agreement.

## VI. **JURY DEMAND**

25. Tyler respectfully demands a jury trial for those issues that are triable.

## VII. **PRAYER FOR RELIEF**

**WHEREFORE,** Tyler requests that this Court grant it judgment against Jacksonville and award to Tyler:

(i).   Tyler's actual damages in excess of the minimum jurisdictional limits of this Court;

(ii).  the declaratory relief outlined above;

(iii). pre-judgment interest as may be provided by law;

(iv).  post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

(v).   such other and further relief to which Tyler may be entitled.

Dated:    February 8, 2022                Respectfully submitted,

*/s/ April Boyer*
April L. Boyer
Florida Bar No. 0168835
**K&L GATES LLP**
Southeast Financial Center
Suite 3900
200 South Biscayne Boulevard
Miami, FL 33131-2399
Telephone: 305.539.3300
Facsimile: 305.358.7095
Email: April.boyer@klgates.com

*Attorneys for*
*Tyler Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record on this 8th day of February 2022.

　　　　　　　　　　　　　　　　　　*/s/ April Boyer*
　　　　　　　　　　　　　　　　　　April Boyer